FILED ✓    RECEIVED
ENTERED    SERVED ON
COUNSEL/PARTIES OF RECORD

AUG 1 9 2014

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM G. LOTT,      ) | 3:12-cv-00228-LRH-VPC |
|         Petitioner,      ) | |
|       v.             ) | **REPORT AND RECOMMENDATION** |
|               ) | **OF U.S. MAGISTRATE JUDGE** |
| U.S. DEPARTMENT OF LABOR,     ) | |
| *ex rel. its Division of Energy Employees*   ) | |
| *Occupational Illness Compensation*    ) | |
|               ) | |
|       Respondent.      ) | August 19, 2014 |
| _____ ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is petitioner's petition for judicial review (#1).[1] Petitioner filed an opening brief (#29). Respondent filed a response/motion for summary judgment (#33), and petitioner replied (#34). For the reasons set forth below, the court recommends that the petition for judicial review be denied and the motion for summary judgment be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner William Lott ("petitioner") seeks judicial review of a final decision of the U.S. Department of Labor ("respondent") denying his claim for wage loss under Part E of the Energy Employees' Occupational Illness and Compensation Program Act, 42 U.S.C. § 7384 *et seq.* ("EEOICPA") (#29, p. 1). Petitioner worked in uranium mines in Colorado from 1961 to 1963. *Id.* at 4. On January 13, 2004, petitioner filed the form EE-1 (Claim for Benefits under the EEOICPA) as a uranium worker for the conditions of pulmonary fibrosis and pneumoconiosis (Administrative

---

[1] Refers to the court's docket number.

Record "AR" 810).  On February 10, 2004, petitioner was approved for an award of $100,000.00 under Section 5 of the Radiation Exposure Compensation Act ("RECA"), for the medical conditions of pulmonary fibrosis and pneumoconiosis (AR 801). On March 22, 2004, respondent's Final Adjudication Branch ("FAB") issued the Final Decision under Part B of the EEOICPA accepting petitioner's claim for benefits for the same two conditions and awarding petitioner compensation in the amount of $50,000.00, as well as medical benefits retroactive to January 13, 2004 (AR 778-780).

On November 18, 2004, petitioner was awarded Social Security Disability for the medical conditions of osteoarthritis in the left knee and pulmonary fibrosis (AR 458-459).  The date the disability began was listed as March 31, 2001.  *Id.*  On January 30, 2006, petitioner filed a claim under Part E of the EEOICPA, seeking compensation for wage loss (#29, p. 3).  On July 15, 2010, petitioner received a Recommended Decision from respondent denying his wage loss claim (AR 281-287).  Petitioner requested a hearing, and on November 17, 2010, a hearing was held in Winnemucca, Nevada. *Id.* at 157. On February 11, 2011, petitioner received a Final Decision from respondent denying his wage loss claim. Id. at 91-101.  Petitioner now seeks judicial review from this court.

## II.  STANDARD OF REVIEW

The Court's review of the DOL's final agency decision is limited to the evidence in the administrative record at the time of the final decision.  *Camp v. Pitts*, 411 U.S. 138, 143 (1973); *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008).  Part E of EEOICPA, § 7385s-6(a) provides that "[t]he court may modify or set aside such decision only if the court determines that such decision was arbitrary and capricious."  The Administrative Procedure Act ("APA") sets forth a similar standard of review, providing that a reviewing court may set aside agency decisions found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).   The standard allows for a very narrow review, and the reviewing court may not substitute its own judgment for that of the agency.  *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6–7 (2001); *Arrington*, 516 F.3d at 1112.   However, the agency must have articulated a rational connection between the facts found and the conclusions made.  *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir.2006) (internal quotations and citations omitted).  The court may only reverse if the agency "relied on factors that Congress did not intend for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *O'Keeffe's, Inc. v. U.S. Consumer Product Safety Comm'n*, 92 F.3d 940, 942 (9th Cir.1996); *Jordan v. U.S. Dept. of Labor*, 2008 WL 4181377 (E.D.Wash.2008) (applying the arbitrary and capricious standard to the DOL's denial of a petitioner's claim under Part B of the EEOICPA).  The agency's decision is presumed valid, and the claimant bears the burden to show that the DOL's denial of the wage-loss claim was unreasonable.  *Short Haul Survival Committee v. U.S.*, 572 F.2d 240, 244 (9th Cir.1978).

### III. DISCUSSION

**A. Administration of the Energy Employees Occupational Illness Compensation Program Act of 2000 ("EEOICPA")**

The EEOICPA establishes a federal compensation program to "provide for timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees, suffering from illnesses incurred by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors."  42 U.S.C. § 7384d.

Under Part B of EEOICPA, covered employees are awarded lump-sum payments of either $50,000 or $150,000 as compensation for designated occupational illnesses resulting from their exposure to radiation, beryllium or silica in the performance of duty at covered facilities. 42 U.S.C.

§§ 7384l through 7384w-1.  Under § 7384u(a) of EEOICPA, DOL awards lump-sum payments of $50,000 to individuals, like petitioner, who previously have received an award from the Department of Justice ("DOJ") under section 5 of the Radiation Exposure Compensation Act, 42 U.S.C. § 2210 Note ("RECA"), to supplement the $100,000 payments previously received from DOJ.

Part E of EEOICPA provides additional benefits to DOE contractor employees and RECA section 5 employees who sustain "covered" illnesses due to their work-related exposure to toxic substances at a covered facility.  42 U.S.C. §§ 7385s through 7385s-15.  Also, § 7385s-4(a) provides that a determination under Part B that an employee is entitled to Part B benefits is deemed to be a determination under Part E that the employee contracted a covered illness due to work-related exposure to a toxic substance at a covered facility.

An individual asserts entitlement to benefits under EEOICPA by filing a written claim with DOL's Office of Workers' Compensation Programs ("OWCP").  20 C.F.R. §§ 30.100, 30.101 (2013).  For Part B claims based on the prior receipt of an award under section 5 of RECA, OWCP's regulations make several exceptions to the usual requirements for the submission of pertinent factual and medical evidence.  In particular, the regulations provide that these claimants do not have to submit medical evidence because OWCP is obligated to automatically accept the same illness or illnesses that DOJ accepted under section 5 of RECA, nor do they have to submit the employment evidence that DOJ relied upon in accepting their RECA claim.  See 20 C.F.R. §§ 30.100(c)(2), 30.101(d)(2).  The only evidence these applicants must submit in order to establish their eligibility is proof that DOJ has determined that they were entitled to an award of $100,000 under section 5 of RECA.  20 C.F.R. § 30.225(a).

Thus, a RECA section 5 employee who received a Part B award for illnesses accepted by DOJ is automatically entitled to medical benefits under Part E for those same "covered" illnesses.

42 U.S.C. § 7385s-4(a).  However, a RECA section 5 employee who is seeking wage-loss benefits under Part E still has the burden to show that she or he meets the statutory criteria for those benefits, which are based on the employee's extent of permanent impairment and/or the number of qualifying calendar years of wage-loss.  Among other things, an employee claiming wage-loss benefits under Part E has the burden to establish:  (1) that he experienced an actual loss of wages in an identifiable month; and (2) that the actual loss of wages was caused by his covered illness.  42 U.S.C. § 7385s-2(a)(2)(A)(i).

After developing the record, including requesting further medical evidence or documentation as necessary, OWCP issues a recommended decision informing the claimant of its recommended findings of fact and conclusions of law.  20 C.F.R. § 30.306.  The claimant may file written objections with its FAB.  20 C.F.R. § 30.310.  FAB considers objections filed by the claimant and will conduct an informal oral hearing, if one is requested by the claimant, before issuing the final agency decision on the claim.  20 C.F.R. § 30.314.

**B. DOL's Final Decision**

In its February 11, 2011 final decision, which was signed by FAB Hearing Representative Frankie L. Wallace, the DOL found that petitioner had developed two "covered" illnesses—pulmonary fibrosis and pneumoconiosis, as well as the consequential illness of congestive heart failure—as a result of his work-related exposure to toxic substances at a uranium mine in the early 1960s (AR 98).  The DOL stated that petitioner retired on March 30, 2001.  *Id.*  The DOL concluded that no medical evidence demonstrated that petitioner experienced wage-loss on March 31, 2001 due to his covered illnesses.  *Id.* at 100.

## C. Analysis

Petitioner argues that he proved by a preponderance of the evidence that his wage loss was due to an excepted, covered illness (#29, p. 7).  Petitioner points to a January 1998 chest x-ray that showed congestive heart failure, an April 2002 abnormal chest CT scan, and an April 2004 note from Dr. Harrison that stated that petitioner definitely would not be able to work due to pulmonary fibrosis, degenerative joint disease, and probably even the heart condition.  *Id.* at 7-8.  He asserts that no medical evidence shows that he was able to work after March 2001or that he was not disabled, and therefore, he met his burden to demonstrate that he qualifies for wage-loss compensation under Part E.  *Id.* at 14.  Finally, petitioner notes that he testified at the hearing:  "I chose to retire early because I was disabled, I couldn't do my job" (*id.* at 9, citing AR 179).

Respondent argues that, despite at least four letters requesting additional medical documentation sent by DOL to petitioner prior to the final decision, petitioner failed to provide medical evidence to demonstrate that his wage loss was caused by his covered illnesses (#33, p. 12). While petitioner points to the physician office note dated April 20, 2004 that states that he definitely cannot work due to the pulmonary fibrosis, he has presented no medical evidence, whatsoever, that his covered illnesses rendered him unable to work as of March 2001.  *Id.* at 14.  The EEOICPA's wage-loss test requires an employee to prove the cause of his actual lost wages, not simply the cause of any future inability to earn wages thereafter.  *Id.*

Petitioner testified at his hearing that he elected to retire early out of concern for his health and because his employer was offering an early retirement package to a group of managing employees age fifty-five and over (AR 179-181).  The court concludes that the medical evidence provided by the petitioner, as well as petitioner's RECA claim file from DOJ, and records from the SSA, fails to demonstrate that plaintiff was unable to work as of March 31, 2001 due to his covered

illnesses.   The final decision states that the medical records include a March 1998 physician's progress note that indicates that petitioner was "doing quite well.  He is putting in 14 hours a day at the mines.  He has no angina or heart failure symptoms;" a July 1999 physician's progress note that states that "he is physically active in his job does five flights of steps several times a day;" and the April 2004 physician's assistant progress note (co-signed in 2009 by a physician) that states that petitioner definitely cannot work due to pulmonary fibrosis (and degenerative joint disease) (AR 95; 219-220).  The medical records also contain a September 30, 2009 letter from Mark Andrews, M.D., from the clinic where petitioner was a long-time patient.  Dr. Andrews states:

> I have gone back through the records that we have here.  There is a chest x-ray dated 01/31/98 that was ordered by Dr. Potter and was read by Betsy S. Card, M.D., a radiologist, that states that the impression was congestive heart failure but I can find no other supporting evidence in our records for the time period in question.

AR 96; 249-250.

The final decision indicates that on April 3, 2007, the DOL requested that petitioner provide further medical evidence, such as a doctor's notes that indicate that petitioner stopped working due to covered illnesses and/or a signed doctor's statement explaining the causal relationship between his covered illnesses and his claimed periods of wage loss (AR 96).

The court concludes that petitioner has failed to demonstrate that the final decision was arbitrary and capricious.  It is petitioner's burden, as an employee claiming wage-loss benefits under Part E, to establish:  (1) that he experienced an actual loss of wages in an identifiable month; and (2) that the actual loss of wages was caused by his covered illness.  42 U.S.C. § 7385s-2(a)(2)(A)(i). While petitioner has the physician note that documents that, as of April 2004, doctors deemed him unable to work, in part, due to his covered illnesses,  no medical evidence whatsoever indicates that petitioner was unable to work as of March 31, 2001, due to his covered illnesses.  At the hearing, petitioner stated that he retired early because he was disabled and could not perform his job (AR

179).  The hearing representative pointed out that when she previously spoke with petitioner on the phone he indicated that the reason he retired early was because they offered a group of employees, including petitioner, an early retirement package.  *Id.* at 179-181.  Petitioner agreed but also testified: "They offered me an early retirement.  It was a way out.  It was a way to pursue my disability and stuff." *Id.* at 180.  And when the hearing representative asked petitioner what doctor he saw around that time period he said that he saw as few doctors as possible, which was what he had done all his life.  *Id.* at 181.[2]  The court concludes that the hearing representative's conclusion that no medical evidence indicates that as of March 2001 petitioner retired because his covered illnesses rendered him unable to work is consistent with the record and not arbitrary or capricious.

Further, petitioner points to that fact that the SSA determined that he was completely disabled as of March 2001 (#29, p. 3).  First, the SSA's disability determination is based on a different statutory standard with different requirements for qualifying for benefits and is not binding on the DOL.  *See, e.g., Foster v. Mathews*, 527 F.2d 1338, 1340 (5th Cir. 1976).  Second, respondents argue that the SSA's conclusions support the DOL's findings (#33, p. 13).  The SSA determined that petitioner suffered from osteoarthritis in his knee—not one of petitioner's covered illnesses under the EEOICPA—as well as pulmonary fibrosis (AR 98-99).  The SSA found that the knee condition was first diagnosed in March 2001, but that petitioner was first diagnosed with pulmonary fibrosis in May 2001, two months after he had retired and was no longer earning any wages.  *Id.*  The court agrees that the DOL properly considered the SSA determination in light of all the medical evidence produced—including the diagnoses dates, the evidence that petitioner elected to retire early with no contemporaneous evidence that his retirement was prompted by a covered

---

[2]  The court is not unsympathetic to petitioner's argument that he may have had signs of the covered illnesses before he retired in March 2001and that when he retired, he "knew" he would not be able to pass a physical to get another job (AR 171, 175).  However, no medical records indicate a diagnosis of a covered illness prior to that date, which is fatal to his wage-loss claim.

illness, and the evidence that he had not yet been diagnosed with pulmonary fibrosis when he chose to retire.

Finally, petitioner contends that, in the alternative, April 20, 2004—the date of the physician's assistant progress note (co-signed in 2009 by a physician) that states that petitioner definitely cannot work due, in part, to pulmonary fibrosis as of that date—should be used as the trigger date for his wage-loss claim (#29, p. 11; AR 95; 219-220).  This argument is unavailing, however, because the statutory wage-loss provision requires that a claimant prove that there was a "trigger" month when he first experienced wage loss as a result of a covered illness.  42 U.S.C. § 7385s-2(a)(2)(A)(i).  A claimant must show actual wage loss, not simply that at some later point in time he became unable to earn wages.  Accordingly, petitioner's entitlement to a wage-loss award could only have originated in March 2001.

## IV. CONCLUSION

Based on the foregoing, the court concludes that the evidence in the record supports the hearing representative's determination, and the denial of petitioner's wage-loss claim is not arbitrary or capricious.  The court therefore recommends that petitioner's petition for judicial review of the Department of Labor's determination (#1) be denied and respondent's motion for summary judgment (#33) be granted.

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the petition for judicial review (#1) be **DENIED** and respondent's motion for summary judgment (#33) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and close this case.

**DATED**: _August 19, 2014._

_____
**UNITED STATES MAGISTRATE JUDGE**